NUMBERS 13-05-00046-CR


 13-05-00047-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


BRYLON LEMONT HUTCHINS, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 248th District Court of Harris County, Texas.


 


MEMORANDUM OPINION



Before Justices Hinojosa, Rodriguez, and Garza


Memorandum Opinion by Justice Hinojosa



 Appellant, Brylon Lemont Hutchins, was indicted for two separate incidents of felony
aggravated robbery. (1) A single jury found him guilty in both cases, and the trial court
assessed his punishment at twenty years' imprisonment and a $5000 fine for one case,
and twenty years' imprisonment for the other. In eight points of error, appellant contends
(1) the evidence is legally and factually insufficient to support his convictions and (2) the
trial court erred by (a) admitting evidence of an extraneous offense and (b) failing to
suppress out-of-court and in-court identifications of him. We affirm.

A. Extraneous Offense


 In his third and fourth points of error, appellant contends the trial court erred in
admitting testimony regarding an extraneous robbery offense because the extraneous
offense was not relevant to any issue in the case and the probative value of the extraneous
offense was substantially outweighed by the unfair prejudice, undue delay, and confusion
of issues relevant to the case.

 We review a trial court's decision to admit extraneous offense evidence under an
abuse of discretion standard. See Sauceda v. State, 129 S.W.3d 116, 120 (Tex. Crim.
App. 2004); Saenz v. State, 843 S.W.2d 24, 26 (Tex. Crim. App. 1992). A trial court is
given wide latitude to admit or exclude evidence of other crimes, wrongs, or acts. 
Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1992). Therefore, we will
uphold a trial court's ruling as long as it is within the zone of reasonable disagreement. Id.
at 391.

 While evidence of the commission of other offenses by a defendant is generally not
admissible to prove he committed the charged offense, it may be admissible to prove
identity when it is a disputed issue in the case. Tex. R. Evid. 404(b); Lane v. State, 933
S.W.2d 504, 519 (Tex. Crim. App. 1996). The extraneous offense must be so nearly
identical in method to the charged offense that the offenses are marked as the defendant's
"handiwork." Lane, 933 S.W.2d at 519; Johnson v. State, 68 S.W.3d 644, 650-51 (Tex.
Crim. App. 2002). In determining whether the similarity between the offenses is sufficient,
the court should consider both the specific characteristics of the offenses and the time
interval between them. Johnson, 68 S.W.3d at 651. Sufficient similarity between the
offenses may be shown by proximity in time and place, or by a common mode of
committing the offenses, i.e., a common modus operandi. Lane, 933 S.W.2d at 519 (citing
Ransom v. State, 503 S.W.2d 810, 813 (Tex. Crim. App. 1974)). 

 Appellant admits that he raised identity as an issue by denying that he was present
during the alleged offenses and challenging the identification testimony of witnesses. 
However, appellant asserts that the similarities between the extraneous offense and the
aggravated robbery offenses are not sufficient to allow the introduction of the extraneous
offense. We disagree. 

 The extraneous robbery and the charged robberies all occurred on April 5, 2004,
within hours of each other in the Meyerland area of Houston. The victim in each robbery
was an older female, each of whom was dragged or thrown to the ground as her purse was
pulled from her arm. Appellant's vehicle was used and identified in all three robberies, and
the witnesses' descriptions of the perpetrator generally matched appellant, who was
subsequently positively identified in all three robberies. In light of the proximity in time and
place and the common distinguishing characteristics, we conclude that evidence of the
extraneous robbery was admissible to show appellant's identity as the perpetrator of the
charged offenses. Appellant's third point of error is overruled.

 In his fourth point of error, appellant contends the probative value of the extraneous
robbery was substantially outweighed by unfair prejudice. Even if evidence is admissible
under rule 404(b), it may still be excluded under rule 403 if the danger of unfair prejudice
substantially outweighs its probative value. See Tex. R. Evid. 403. The State asserts that
appellant failed to preserve this issue for our review.

 To preserve a complaint for appellate review, a party must present a timely request,
objection, or motion to the trial court stating the specific grounds for the desired ruling if the
specific grounds are not apparent from the context. Tex. R. App. P. 33.1(a); Blue v. State,
41 S.W.3d 129, 131 (Tex. Crim. App. 2000). Here, the State sought to offer evidence of
the extraneous robbery after appellant rested. Prior to the admission of the evidence, the
trial court held a hearing outside the presence of the jury; the witness described the
extraneous robbery at the Fiesta grocery store and identified appellant as the perpetrator. 
Appellant objected to the introduction of evidence regarding the extraneous robbery,
arguing that for impeachment purposes, (2) the evidence should be limited to identifying
appellant as being present at the Fiesta on April 5. He asserted, "[t]he fact that another
offense occurred is more prejudicial than probative for impeachment purposes. . . ." The
trial court agreed with appellant, stating that for purposes of rebuttal, only testimony
showing appellant was outside of the hotel room would be admissible. The trial court said
that because identity was at issue, if the extraneous robbery was similar enough to the
charged offenses, it might be admissible for purposes of identity. The State then proffered
evidence of the extraneous robbery. Appellant argued that there was nothing "unique"
about the extraneous offense and the charged offenses. The trial court then reviewed the
specific similarities between the offenses and ruled that all of the circumstances of the
robbery were admissible because identity was at issue. Following this ruling, appellant
responded, "[a]nd I'm objecting." As each witness to the extraneous offense testified,
appellant "renewed his objection." 

 Although appellant objected that evidence of the extraneous offense was more
prejudicial than probative, he did so only in the context of his objection to the introduction
for impeachment purposes. However, after the trial court ruled that it would only allow
evidence that the witness saw appellant outside of the hotel that day, the trial court then
considered the admissibility of the extraneous offense to show identity. While appellant
objected to its admissibility based on lack of similarity between the two offenses, appellant
never objected that the introduction of the extraneous offense to show identity was more
prejudicial than probative. After the trial court ruled on the admissibility of the extraneous
offense to show identity, appellant's mere statement that he was "objecting" failed to
specifically alert the trial judge to the alleged error of which he now complains. See Goff
v. State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996). Accordingly, we conclude that
appellant failed to preserve a rule 403 issue for appellate review. Appellant's fourth point
of error is overruled. 

B. Identifications


 In his fifth, sixth, seventh, and eighth points of error, appellant contends the trial
court erred by failing to suppress the in-court and out-of-court identifications of appellant. 
In his fifth and seventh points of error, appellant asserts that the out-of-court identifications
by the two complainants and an additional witness were unduly suggestive and in violation
of his federal constitutional rights. In his sixth and eighth points of error, appellant asserts
that the in-court identifications by the complainants and the additional witness were tainted
by pre-trial identification procedures.

 In evaluating a defendant's due process rights with regard to the admission of
identification evidence, pre-trial and in-court identifications are closely connected; "a pre-trial identification procedure may be so suggestive and conducive to mistaken identification
that subsequent use of that identification would deny the accused due process of law." 
Barley v. State, 906 S.W.2d 27, 32-33 (Tex. Crim. App. 1995) (citing Stovall v. Denno, 388
U.S. 293 (1967)). We conduct a two-step analysis to determine the admissibility of an in-court identification: (1) whether the out-of-court identification procedure was impermissibly
suggestive; and (2) whether that suggestive procedure gave rise to a very substantial
likelihood of irreparable misidentification. Id. at 33 (citing Simmons v. United States, 390
U.S. 377 (1968)). However, even where a pre-trial identification procedure may be
suggestive, "it is the 'substantial likelihood of misidentification' . . . that works the
deprivation." Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988) (quoting
Simmons v. United States, 390 U.S. 377 (1968)). "Thus, if the totality of the circumstances
reveals no substantial likelihood of misidentification despite a suggestive pre-trial
procedure, subsequent identification testimony will be deemed 'reliable,' 'reliability [being]
the linchpin in determining the admissibility of identification testimony.'" Id. (quoting
Manson v. Brathwaite, 432 U.S. 98 (1977)). The burden is on the defendant to show by
clear and convincing evidence that an identification procedure is impermissibly suggestive
or that an in-court identification is unreliable. Barley, 906 S.W.2d at 33-34; Harris v. State,
827 S.W.2d 949, 959 (Tex. Crim. App. 1992) (citing Madden v. State, 799 S.W.2d 683,
695 (Tex. Crim. App. 1990)).

 First, we look to whether the pre-trial lineup at which appellant was identified was
impermissibly suggestive. A pre-trial identification may be rendered "suggestive" by the
way the identification procedure is conducted if an officer points out the suspect or
suggests that a suspect is included in the lineup, or by the content of the lineup if the
suspect is the only individual who closely resembles the pre-procedure description. Barley,
906 S.W.2d at 33 (citing Herrera v. State, 682 S.W.2d 313 (Tex. Crim. App. 1984);
Williams v. State, 675 S.W.2d 754 (Tex. Crim. App. 1984)). "An individual procedure may
be suggestive or the cumulative effect of the procedures may be suggestive." Id. 

 In this case, appellant complains about the content of the lineup through which he
was identified pre-trial. The trial court held a hearing on appellant's motion to suppress the
pre-trial identifications. The evidence and testimony show that the lineup consisted of five
African American males. All five participants had some type of facial hair and were
wearing civilian clothing. There was a variation in the height of the participants of two to
three inches, with appellant being the shortest. In addition, the length of hair of the
participants varied from very short to moderately long. Appellant's hair was the longest of
any of the lineup participants and was described by one of the witnesses as a "mini-afro." 

 Officer Darren K. Williams testified that the four fill-ins were chosen from the general
population of the jail at the time based on features that most resembled or fit in with
appellant's. Prior to viewing the lineup, the witnesses were given the standard
admonishments that the individual involved in their incident may or may not be present in
the lineup, and that they were under no obligation to pick anyone if they were not sure that
the person involved in the incident was present in the lineup. The witnesses were also
instructed that hairstyle, facial hair, clothing, and hairstyles may change. Officer Williams
testified that in the descriptions given by the witnesses, the suspect's height varied from
five feet, six inches to five feet, eight inches, and the description of the suspect's hair
varied from medium to long, and one of the witnesses may not have included length of hair
in the description given to the police. He further testified that the lineup participants all met
the description of complexion and general build given by the witnesses. 

 The lineup was conducted on April 7, 2004, and was attended live by witness
Elizabeth Burnett. Victim Jerline Lambert viewed a videotape of the lineup at her home on
April 8, 2004, and victim Geraldine Green viewed a videotape of the lineup at the police
station a few weeks after the robberies. All three witnesses identified the person standing
in position 4, appellant, as the suspect, and said that at no point did anyone indicate to
them that a suspect was included in the lineup or that they should pick a certain person.
Moreover, while all three witnesses acknowledged that appellant's hair and height were
characteristics that added to the identification, they all insisted that they recognized other
features. 

 Burnett testified at the hearing that she recognized the defendant both from the
lineup and from the robbery, and that she had no trouble recognizing him. She said that
during the robbery she was able to view him from a few feet away and remembered and
recognized him. Burnett further stated that she would have recognized appellant even if
he had shorter hair at the lineup, and that she still recognized him at the time of the
hearing, even though he had much shorter hair by that time.

 Geraldine Green also said that she recognized the defendant both from the lineup
and from the robbery. In her opinion, the participants in the lineup were not all of the same
height but all had about the same length hair, and in her opinion, appellant's hair was not
really longer than anyone else's, but it was "bushier." She further said that appellant's
movements were familiar to her from the robbery. She testified that she got a look at
appellant as he got into his car right next to her after he pushed her down. Green said that
appellant's hair, height, and movements were distinguishing characteristics at the lineup. 
At the pre-trial hearing, Green testified that she recognized appellant from the robbery, but
that his hair had been cut. She said that she recognized his face and "everything about
him." 

 Jerline Lambert testified that she recognized appellant both from the robbery and
from the lineup. She said that she recognized him because of

the height and I don't know, it just kind of came back. I guess it's something
with the mind. It just kind of came back. When I saw the video it came back. 
There wasn't any hesitancy about who it was.


She further said that when she saw the lineup, she "just knew who he was." She said that
she recognized his height, his complexion, his size, and his facial features. Lambert
explained that "there [were] some tall men and some medium-sized men in the video. I
don't know if they were exactly his height, but when I saw his face and everything, I just
knew it."

 We conclude that while some details of the lineup may have been slightly
suggestive, as a whole it was not impermissibly so. Appellant's fifth and seventh points of
error are overruled. 

 Even under circumstances where a lineup constitutes an impermissibly suggestive
pre-trial identification, "identification testimony will be admissible if the indicia of reliability
outweigh the apparent corrupting effect of the unnecessarily suggestive pre-trial
occurrence." Harris v. State, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992). In making a
determination regarding whether a suggestive lineup created a substantial likelihood of
misidentification, we consider several factors, including but not limited to: (1) the witness's
opportunity to observe the criminal act; (2) any discrepancy between the pre-lineup
description and the defendant's actual appearance; (3) whether the witness identified
another individual prior to the allegedly illegal lineup; (4) prior identification of the accused
by the witness or failure to identify the accused prior to the suggestive lineup; and (5) the
amount of time between the crime and the illegal lineup. Barley, 906 S.W.2d at 35 n.8.

 Each victim described viewing appellant during the robberies, in daylight, from only
a few feet away. Appellant fits within the descriptions given to police at the scene, and
none of the witnesses ever identified another individual as the perpetrator, nor hesitated
in their identification of appellant. Two of the witnesses identified appellant within days of
the robberies; the third identified him just a few weeks later. Moreover, at the time of the
trial, all three witnesses testified that they were positive that appellant was the perpetrator
based on their recollections of the robbery and not just from the lineup, and all three were
able to identify specific cosmetic differences in appellant's appearance from the time of the
robberies to the time of trial. Weighing these considerations against the slight suggestive
aspects of the pre-trial lineup, we conclude that the in-court identifications are reliable (3)
 and
that appellant has not met his burden. Appellant's sixth and eighth points of error are
overruled. 

 The judgment of the trial court is affirmed.


 FEDERICO G. HINOJOSA

 Justice



Do not publish. See Tex. R. App. P. 47.2(b).


Memorandum Opinion delivered and filed

this the 28th day of September, 2006.
1. Both indictments were tried at the same time and before the same jury. On appeal, appellant raises
the same issues and makes identical arguments regarding each case. Accordingly, we address both appeals
in one opinion. 
2. Appellant testified that he never left his motel room on April 5, 2004.
3. In his first and second points of error, appellant attempts to challenge the legal and factual
sufficiency of the evidence. However, in his argument appellant only challenges the evidence regarding his
identification. Specifically, appellant challenges the credibility of the testimony establishing his identification. 
We have already discussed the reliability of the identifications of appellant by the complaining witnesses. Any
further evaluation of the credibility of the witnesses is strictly within the province of the jury. See Johnson v.
State, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). Appellant has otherwise failed to identify how the evidence is
legally and factually insufficient. See Tex. R. App. P. 38.1(h). Appellant's first and second points of error are
overruled. See Tex. R. App. P. 47.1.